## E. B. HARROLD ET AL. v. G. W. ARRINGTON.

### (Case No. 4982.)

1. REMOVAL TO FEDERAL COURTS — BOND — INSUFFICIENCY. — A bond which does not contain a condition for the payment of costs is insufficient under the act of congress of March 3, 1875, providing for the removal of causes from state to federal courts, and a state court is not bound to accept such defective bond. It is only upon filing a proper petition and offering sufficient security for the performance of certain acts that the state court surrenders its jurisdiction. If security is not given for the performance of all the acts named in the statute, one of the most important of which is the payment of costs, the cause does not stand removed to the federal court. The bond is to protect the opposite party from delay and costs, and the court has no right to deprive him of the protection afforded by the statute.

2. SAME. — The lack of a condition in such bond to pay costs is not supplied by the stipulation to "do such other appropriate acts as by the act of congress in that behalf are required," for the payment of costs is not an act required by the statute.

3. SAME — POSTPONEMENT. — The court was justified in refusing to postpone a cause one term in order that a party might amend his bond.

4. GREER COUNTY — POLITICAL QUESTION. — It is judicially known that the political department has always claimed Greer county as part of the state, and exercised acts of control over it, and until that department ceases to exercise such control, the courts will treat it as subject to the jurisdiction of the state of Texas. The settlement of the boundary line of Texas is not within the scope of the judicial department.

APPEAL from Wheeler. Tried below before the Hon. Frank Willis.

This suit was brought by appellants against appellee, as sheriff and *ex officio* tax collector of Wheeler county, to restrain appellee from enforcing the collection of certain state and county taxes assessed by Wheeler county upon certain horses and cattle of appellants, which horses and cattle were situated in Greer county at the time of the assessment and before and after the 1st day of January, 1882. Appellants claim in their petition that the taxes were illegally assessed against their property, upon two grounds, viz.: *First.* Because the territory known and called Greer county, and which, by act of the legislature, was attached to Wheeler county for judicial purposes, and in which territory the personal property was situated, never was a part of the state of Texas. *Second.* That they were non-residents, and their property in an unorganized county was not subject to such taxes.

A petition and bond for removal to the United States court was filed and the application refused. The case was tried before the court and judgment given for defendants, from which judgment plaintiff appealed.

*Ball & McCart,* for appellants, cited: Dennis *v.* Alachua, 3 Woods, 683; Dillon on Removals, secs. 74–76, 77 and notes; Baker *v.* Peterson, 4 Dill., 362; Osgood *v.* Chicago, 7 Ch. Leg. N., 241; 2 Cent. L. J., 275–283; Parker *v.* Ornman, 18 How., 137–141; Gold W. & W. Co. *v.* Keyes, 96 U. S., 199; Trafton *v.* Nougues, 4 Saw., 178; Rowland *v.* Ins. Co., 2 C. L. B., 56; Cooley on Tax., 209–215; Burroughs on Tax., 271 *et seq.;* R. S., Appendix, p. 25.

*Temple Houston* and *J. N. Browning,* for appellee, cited: R. S., art. 1277; Green *v.* Crow, 17 Tex., 180; Arnold *v.* Hockney, 51 Tex., 46; Hagerty *v.* Scott, 10 Tex., 525; Fowler *v.* Buckner, 23 Tex., 84; 18 U. S. Stat. at Large, 470, sec. 3; Dill. on Rem. of Causes, sec. 74, note 1; Torrey *v.* Grant Works, 14 Blatch., 269.

WILLIE, CHIEF JUSTICE.—The assigned errors question the jurisdiction of the state of Texas over the territory known as Greer county; the right of the officers of Wheeler county to assess and collect taxes upon property situated in Greer county; and the correctness of the rulings of the court below refusing to remove this cause to the United States circuit court, or to continue the suit for a term for the purpose of allowing time to amend the bond and application as well as to procure the attendance of the plaintiffs in the cause.

In the printed argument of counsel for appellants, it seems to be admitted that two only of the questions raised by these assignments can have any influence upon the decision of this appeal. Those are stated to be: 1st. Were the petition and bond for removal sufficient under the act of 1875? 2d. Can the personal property of a nonresident of an unorganized county situated in such unorganized county be taxed by the county to which such unorganized county is attached for judicial purposes?

The second of these questions does not arise upon the record. It was alleged in the petition that the plaintiffs were not residents of Greer county, but this was denied by the answer. The defendant also averred that the object of the plaintiffs' suit was to evade the payment of the taxes legally assessed against them as *citizens and property holders of Greer county.* Thus their allegation of residence was put directly in issue, and yet no proof upon the subject was offered, and the allegations of the petition in this respect were not sustained.

The first question is of a more serious character. So far as we know, it has never been adjudicated by the supreme court of the

United States. It has been expressly decided in the circuit courts of the United States for the northern and southern districts of New York, that a bond which does not contain a condition for the pay-ment of costs is insufficient under the act of congress of March 3, 1875, providing for a removal of causes from the state to the federal courts. Webber *v.* Bishop, 13 Fed. Rep., 49; Torrey *v.* Grant Loco-motive Works, 14 Blatch., 269.

It would seem, too, from decisions made by other United States circuit courts, upon questions raised as to the sufficiency of removal bonds, that they would hold in accordance with the above rulings, were the point presented to them for adjudication. They hold in effect that, unless the requirements of the act, which are jurisdic-tional prerequisites, are substantially complied with, the power of the state courts to hear and determine the cause remains undis-turbed. Burdick *v.* Hale, 7 Biss., 96; McMundy *v.* Life Ins. Co., 4 Weekly Notes Cases, 18.

These cases treat the filing of a good bond, conditioned as the statute prescribes, as a condition precedent to the right of removal; and such is the conclusion reached by Field in his treatise on the jurisdiction of the federal courts, sec. 178.

There is also a line of decisions in the United States circuit courts to the effect that after a case has been removed to one of these courts it will not be remanded because of a defective bond or peti-tion, but that either may be amended under the direction of the court. Deford *v.* Mehaffy, 13 Fed. Rep., 481; Harris *v.* Del., L. & W. R. Co., 18 Fed. Rep., 833; Beede *v.* Cheney, 5 Fed. Rep., 388.

That it is not the intention of these courts to hold that the state courts must accept a bond defective in substance, and leaving out a material condition, is apparent from the reasoning of the decis-ions. The extent of their ruling is that, if the state court has ac-cepted the bond and ordered the removal, and the record has been filed in the United States court, the removal is complete, and the cause will be retained, though an amendment may be necessary in order to make the bond comply with the requisites of the act of congress. In Beede *v.* Cheney it is said that the jurisdiction of the United States court does not depend upon the form nor even the substance of the bond which is presented to and *approved by the state court before removal.*

In Harris *v.* Del., L. & W. R. Co. the court say: "It is conceded that the state courts may refuse to grant an order to remove a cause if the applicant has not strictly complied with the requirements of the act of congress respecting removals." The learned judge then

goes on to hold that as the defects, when discovered, may be supplied, the federal court will not remand for such defects, but allow them to be cured by amendment. But he holds that if the omission is not thus supplied the suit must be remanded, and quotes the language of the supreme court of the United States in Gold Washing & Water Co. *v.* Keyes, 96 U. S., 201, to that effect.

And to the same effect in the case of Deford *v.* Mehaffy; this case holding, in addition, that the amendment may be made in either the state or federal court, according to their practice, respectively.

So that the only difference between the two lines of decisions is, in the first the defective bond is held insufficient to retain jurisdiction in the federal court after the case is removed there, although it has been approved by the state court; in the other, it is held that the defects in a bond approved by the state court may be cured by amendment in the federal court, and for that reason jurisdiction of the cause will be retained, and its defects supplied by amendment.

In neither line of cases is it held that the state court is bound to accept a bond rendered substantially defective by the omission of an important condition. Indeed, such holding would seem to be against the letter and spirit of the act of congress under which the removal is claimed, and contrary to the utterances of the supreme court of the United States in passing upon similar questions.

It is only upon filing a proper petition, and offering good and sufficient surety for the performance of certain named acts, that the state court loses jurisdiction of the cause. It must necessarily follow that if no sureties are offered, or sureties for the performance of only a portion of the acts named in the statute, the cause does not stand removed to the federal court. It would seem to be an idle requirement of the law that certain things shall be done by a party before he shall be entitled to remove a cause, and yet allow him the removal upon his failure or refusal to perform one or more of the most important of these requirements. If the statute had intended that one of its provisions should have no effect, that provision would doubtless have been omitted. If the courts can do away with one essential requirement of the law, they can do away with another, and with all, and remove a case without surety for the performance of a single act required by the statute. The bond is made by law as essential to a removal as is the petition. Not only so, but the substantial requisites of the bond are prescribed, whereas those of the petition are not. Yet we find the United States supreme court holding that either the petition alone, or taken in connection with the record, must show on its face that the petitioner

has, under the statute, the right to take the suit to another tribunal. Gregory *v.* Hartley, 113 U. S., 743; R. R. Co. *v.* Koontz, 104 U. S., 14.

There is more reason for requiring substantial compliance with the law on the part of the bond than the petition. The latter should show the right to remove the case. If this fact appears otherwise it is sufficient. But the bond is made to protect the opposite party from delay and costs, and the courts have no right to deny him the protection in these respects guarantied by the statute.

Moreover, the removal act of 1867 did not require the bond to contain this condition as to costs. The act of 1875 superadded it to the other conditions formerly prescribed. This must have been done for some purpose, for the congress of the United States would not have gravely and deliberately inserted a new and important condition if they had intended that it should have no effect, and that a bond in the old form should still be sufficient under the new statute.

Distinguished judges of the United States circuit courts have given much consideration to the question of whether or not a bond for re- moval under the act of 1867 must conform to the requirements of that statute or of the act of 1875. Torrey *v.* Grant L. Works, 14 Blatch., 369; McMundy *v.* Conn. Gen. Life Ins. Co., 9 Chic. Legal News, 324. They would have been wasting their time and learning upon an immaterial matter, if the new condition added by the latter statute made no important change in the bond.

Nor do we think that the want of a condition to pay costs in the present bond was supplied by the stipulation to "do such other ap- propriate acts as by the act of congress in that behalf are required."

The payment of costs by the party removing the cause is not an act required by the removal statute of 1875. The matter of costs is left entirely to the discretion of the circuit court when it remands the cause. 19 U. S. Stat. at Large, p. 472, sec. 5. It is different in reference to entering an appearance in the circuit court, which the act itself prescribes shall be done within a certain time. Id., sec. 7. Hence, the decision in Cooke *v.* Seligman, 17 Blatchf. C. C. Rep., 452, is inapplicable to the case. We think for the rea- son that the bond did not contain the prescribed conditions for the payment of costs, the court did not err in refusing the removal. This renders it unnecessary for us to consider the petition, which, however, seems to have been sufficient.

Had a new bond with proper conditions been tendered before or at the time the cause was called for trial, the court might possibly

have accepted it and removed the cause. But the application was to postpone the cause to another term, to allow time to file an amended bond. This application was not supported by affidavit, nor was it made known to the court in any other way that such a bond would be given if the delay was granted. And even if this fact had been shown, we think the court would have been justified in refusing to postpone the collection of taxes for the purpose of enabling the appellants to give a bond which they should previously have tendered, and which was not given through their own negligence.

The application for continuance was properly overruled. It did not show in what respect the presence of the plaintiffs was material upon the trial. They did not seem to be needed as witnesses, and, if so, no effort to procure their attendance at the then term of the court was shown, nor any excuse for not using diligence.

Whether or not Greer county is part of the state of Texas depends upon where the northern boundary line of our state, dividing it from the Indian territory, should be located. This is a question to be settled by the political and not the judicial department of our state government. It is judicially known to us that the political authority has always claimed the territory composing Greer county as part of the domain of our state, and has exercised acts of control over it; such as organizing it into a county and attaching it to another of our counties for judicial purposes, etc. We cannot undertake to limit the jurisdiction thus recognized and asserted by the political department, and, until that department ceases to exercise such authority, we must treat this county as subject to the jurisdiction of the state of Texas. Bedel v. Loomis, 11 N. H., 15; State v. Dunwell, 3 R. I., 127; Guadalupe Co. v. Wilson Co., 58 Tex., 228; Foster v. Neilson, 2 Pet., 254; United States v. Arredondo, 6 Pet., 691.

There is no error in the judgment, and it is affirmed.

AFFIRMED.

[Opinion delivered May 19, 1885.]